# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

RICHARD DISHER, ERIC KLINE, JOHN
O'MALLEY and DIMITRI MISHUROV,
on behalf of themselves and all others                                Case No. _____
similarly situated,

        Plaintiffs,                                **CLASS ACTION**

     v.

                                 **JURY TRIAL DEMANDED**

TAMKO BUILDING PRODUCTS, INC.
and TAMKO ROOFING PRODUCTS, INC.,

        Defendants.

---

## CLASS ACTION COMPLAINT

---

Plaintiffs Richard Disher, Eric Kline, John O'Malley and Dimitri Mishurov (collectively, "Plaintiffs") on behalf of themselves and all persons and entities similarly situated ("the Class"), by and through the undersigned counsel, allege as follows upon personal knowledge as to themselves and their own acts and experiences and, as to all other matters, upon information and belief based on, inter alia, investigation conducted by counsel:

### INTRODUCTION

1.      This is a class action lawsuit brought by Plaintiffs on behalf of themselves and a Class of individuals who own or have owned homes or other structures on which fiberglass roofing shingles, sold under the name "Heritage®" and manufactured by TAMKO® Building Products, Inc. and TAMKO® Roofing Products, Inc. (collectively, "Defendant" or "TAMKO®"), are or have been installed.

2.      Defendant's Heritage® shingles are plagued by design flaws that result in cracking, curling, blistering, degranulation and general deterioration.  Yet Defendant continues to sell them to the public and continues to make false representations and warranties despite the fact that the shingles are defective and will prematurely fail -- causing property damage and costing consumers substantial removal and replacement costs.

3.      This class action seeks damages, punitive damages, injunctive relief, costs, attorneys' fees, and other relief as a result of Defendant's willful, wanton, reckless, and/or grossly negligent conduct in causing consumers' structures to be in a dangerous, defective, unsafe, and unfit condition for habitation.

## PARTIES

4.      At all relevant times, Plaintiff Richard Disher has been a citizen of Illinois, residing in the County of Madison.

5.      At all relevant times, Plaintiff Eric Kline has been a citizen of Colorado, residing in the County of Denver.

6.      At all relevant times, Plaintiff Dimitri Mishruov has been a citizen of Colorado, residing in the County of Denver.

7.      At all relevant times, Plaintiff John O'Malley has been a citizen of Kentucky, residing in the County of Jefferson.

8.      TAMKO Building Products, Inc. and TAMKO Roofing Products, Inc. are corporations organized and existing under the laws of the State of Missouri, with their principal place of business located in Joplin, Missouri.

9.      Defendant designed, manufactured, warranted, advertised, and sold defective shingles that were installed on thousands of structures located in Illinois, Colorado, Kentucky and

throughout the United States.

## JURISDICTION AND VENUE

10.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331 and the

Class Action Fairness Act of 2005, 28 U.S.C. §1332(d) (2).  The matter in controversy in this

class action exceeds $5,000,000.00 exclusive of interest and costs, and some members of the

Class are citizens of states other than the states in which Defendant is incorporated and has its

primary place of business.

11.     Venue is proper pursuant to 28 U.S.C. §1391(a) because: (1) a substantial part of

the events giving rise to this action occurred in this District; and (2) a substantial part of the

property that is the subject of this action is located in this District. Defendant maintains a

warehouse in Illinois.  In addition, in the Southern Illinois area alone, Defendant distributes

shingles to the following distinct dealers: STOTLAR HERRIN LUMBER CO., EAST SIDE

LUMBERYARDD SUPPLY CO. INC., SOUTHSIDE LUMBER COMPANY, BOB STOTLAR

BUILDING CENTER, R P LUMBER COMPANY INC., ASSOCIATED LUMBER, BARNES

LUMBER CO., WRIGHT DO IT CENTER, R P LUMBER COMPANY INC., CENTRALIA

HOME CENTER, SOUTHERN WHISTLE LUMBER CO. INC., ASSOCIATED MATERIALS,

and ADDIEVILLE LUMBER.

12.     As a result of Defendant designing, manufacturing, marketing, distributing,

promoting, and/or selling, either directly or indirectly through third parties (such as the

distributors listed above) or related entities, Heritage® shingles throughout Illinois, Defendant

obtained the benefits of the laws of Illinois and profited from Illinois commerce.

13.     Defendant conducted systematic and continuous business activities in and

throughout the state of Illinois and otherwise intentionally availed itself of the market in Illinois

through the promotion and marketing of its products.

## FACTUAL ALLEGATIONS

14.    Since 1985, Defendant has been engaged in the business of designing, developing, manufacturing, distributing, marketing, selling, and installing fiberglass Heritage® shingles.  On its website, www.tamko.com, Defendant boasts that "TAMKO took the beauty of architectural laminates shingles to the next level with its introduction of fiberglass Heritage Series shingles, offering an attractive color selection."

15.    Defendant sells its products through a network of retailers, installers, and distributors.

16.    Heritage® shingles are manufactured using the same basic formula: a base that consists of a double-layer fiberglass mat coated on both sides with asphalt, and a top layer of ceramic mineral granules along with a strip of asphalt sealant.

17.    Defendant manufactured and marketed its shingles under the American Heritage® series with various product names including, but not limited to, Heritage, Heritage 50, Heritage 50 AR, Heritage XL AR, Heritage 30, Heritage 30 AR, Heritage Vintage, Heritage Vintage AR, Heritage Premium, Heritage Woodgate, Heritage IR, Heritage Declaration, Heritage M50, Heritage MXL, Heritage M30, Heritage Stormfighter AR, and Heritage Windfighter.

18.    Defendant maintains District Offices in: Colorado, Alabama, Maryland, Texas and Missouri; Manufacturing Facilities in: Alabama, Maryland, West Virginia, Tennessee, Kansas, Missouri, Florida and Texas; Warehouses in: Illinois, Utah, Arizona, Nebraska, Oklahoma, Missouri, Florida, Georgia and South Carolina; and a Public Warehouse in: New Mexico.

19.    Customers of Defendant make purchasing decisions based, in part, upon the

information presented by the company through its website, marketing literature, advertisements and warranties.

20.    On its website, www.tamko.com, Defendant makes the following claims concerning its shingles (including Heritage®):

> Offering quality roof protection is in our Heritage.
>
> ***
>
> Choosing TAMKO® products will provide professional-grade performance to enhance roof protection.
>
> ***
>
> Nothing distinguishes the look of a home quite like an architecturally shingled roof. But more than aesthetics alone, a roof should offer performance and protection. TAMKO® offers a complete line of shingles that delivers the cut, color and coverage that not only allows you to express your style as a homeowner, but also helps protect your most valuable asset. Now that's beauty that performs.
>
> ***
>
> Heritage Series Laminated Asphalt Shingles by TAMKO® have always provided years of striking beauty and excellent roofing protection . They also offer the longest up-front protection available.
>
> ***
>
> Shingles with a great Heritage.
>
> • Part of TAMKO's popular Heritage Series of Laminated Asphalt Shingles
> • Naturally deep shadow lines portray the look of real wood shakes
> • Five outstanding color choices enable you to personalize the beauty
>
> ***
>
> • Made with a double-layer fiberglass mat for strength
> • Coated on both sides with weathering-grade asphalt and topped with ceramic mineral granules for excellent roofing protection
> • Features self-sealing asphalt strip for added wind resistance

***

- Improves the look and curb appeal of your home without the high costs or liabilities associated with wood
- Excellent for new construction or reroofing

***

BUILDING PRODUCTS FOR THE PROFESSIONAL.

Since 1944, building professionals and homeowners have looked to TAMKO for quality products that are built to perform.

21.     Defendant has knowingly and intentionally concealed, and failed to disclose that, notwithstanding statements on its website (such as the above), brochures, advertisements and warranties, its shingles routinely deteriorate at an accelerated rate by cracking, curling, blistering and degranulating far in advance of the expiration of their purported warranty periods.  Indeed, Defendant's shingles have deteriorated and will continue to deteriorate at an accelerated rate which clearly demonstrates their lack of durability and resiliency.

22.     Defendant advertised that the shingles meet certain industry standards (i.e., ASTM International -- a standard setting organization that establishes and maintains industry standards for many different products) despite failing to test and adequately determine the reliability of its product when used in the real world.

23.     Defendant has knowingly and intentionally concealed, and failed to disclose, that it actually had no intention of providing the services set forth in its purported warranties.

24.     Upon information and belief, Defendant has had ample notice of the deficiencies described herein for many years and has been routinely notified by its customers (by way of warranty claim submissions and complaints) that its shingles are/were defective and not functioning as advertised and warranted.

25.     In addition to damages to their shingles and roofs, Plaintiffs and the Class have also suffered damage to the underlying elements of their structures.   Ignoring customer complaints and concerns, Defendant has failed to implement any changes to its shingle products or warranty procedures to remedy the defects associated with its products.

26.     Had Defendant not withheld and omitted vital information concerning the design, reliability and performance of the shingles, Plaintiffs and members of the Class would not have purchased and/or installed them on the roofs of their structures.

**Frustrated Customer Postings**

27.     The following represents a small sample of internet postings by owners of Defendant's shingles [sic throughout]:

> We built a new home in the summer of 2011 with Heritage 30 roofing. In the 2 years since large sections of the roof have blown off 8 times. The manufacturer is completely non-responsive but the contractor has been fixing it to this point. They are now starting to say the shingles were bad from the start and we need to push back on the manufacturer for a total replacement. We have tried but get know response. They say they will send a kit to collect samples and get paperwork filled out but they never send anything. This company needs to be put out of business quickly.[1]

> I had Tamko Heritage 30 laminated shingles installed on my house in 2004 and the aggregate is coming off on about 10-20% of the shingles. I have contacted Tanko but have received no response to date.[2]

> My house was purchased 'new' in 2007 [Tamco Heritage roof installed in November 2007], and winds of 50 mph t0 65 mph these same shingles blow-off like they were just laying on the roof. After two complaints with Tamco, and they are still saying that the problem is not because of the manufacturer. I am very frustrated![3]

> We have had shingles blow off … after the second time having people replace shingles we asked them what the problem was. The people that replaced them said the shingles are cheap and that the adhesive is faulty and there is way to much

---

[1]     MY3CENTS, http://mythreecents.com/reviews/tamko (last visited June 10, 2014).
[2]     *Id.*
[3]     *Id.*

granulation on the shingles.[4]

We purchased our house new in 2011. Shingles have blown off the roof in at least three occasions since… the wind conditions were not extreme on the other two occasions and none of the houses nearby lost shingles. Our contractor says that they did not seal properly.[5]

Every spring where there is any wind at all, several sheets of shingles blow off… The roofer said the shingles did not have adequate sealant.[6]

Our builder installed TAMKO shingles. This is an expensive home, around $275,000. Every spring when there is any wind at all, several sheets of shingles blow off. The first year, the builder restored them within warranty. The second year, I spent about $20 in postage and also hired a roofer to help send samples to TAMKO. The roofer said that the shingles did not have adequate sealant. TAMKO gave a song and dance about winds of a certain velocity in the area and that went beyond the shingles' warranty. Must not have been much of a warranty. No other shingles in my neighborhood fell off. The people on the phone I spoke with were downright rude. Probably I will be due a new roof sooner rather than later. Heaven knows I WILL NOT USE TAMKO SHINGLES EVER AGAIN. Class action suit, anyone?[7]

We bought our house new almost 10 years ago. We have had shingles blow off every time we have a high wind after the second time having to replace shingles we asked them what the problem was. The people that replaced them said the shingles are cheap and that the adhesive is faulty and there is way to much granulation on the shingles. Since the builder has the shingles in his name we don't have a leg to stand on. The repair man said that our best bet is to hope for the next strong wind to take enough off to merit our insurance to pay for a new roof because until then we will have to keep paying out of pocket to replace and repair wind damage!!!! Don't use this product!!!! You will be continually paying repair bills and new shingle costs!!!![8]

I have Tamko Heritage 30 shingles on my house that was built in 2004 that are already failing. A lot of them are almost bare as all the gravel continues to fall off of them. The smaller 3 demential pieces are falling off. And all the edges frayed, Fiberglas showing. I went through Tamkos warranty claim process and they sent me a certificate for prorated 25sq. Out of 37sq. And shingles only, no labor , no

---

[4]    Tamko Heritage 30, CONSUMERREPORTS.ORG, http://www.consumerreports.org/cro/home-garden/home-improvement/roofing/roofing-ratings/models/overview/tamko-heritage-30-99021091.htm (last visited June 10, 2014).

[5]    *Id.*

[6]    *Id.*

[7]    *Id.*

[8]    *Id.*

underlayment , no metal. Looks like I'm responsible for the rest of the cost, this to me is completely unfair considering I bought a 30 year shingle that failed in 9 years. All the rest of the houses in my sub. Have GAF shingles and they all look really good still. My builder wanted to install GAF shingles and I demanded Tamko because I liked the color, a 30 year shingle is a 30 year shingle regardless of brand right? Expensive lesson on my part. DON'T BUY THIS PRODUCT!!!!! When I called Tamko back and questioned their settlement offer they very rudely read me their "limited warranty" , not getting anywhere there. All I can do is try to get the word out so somboby else doesn't make the same mistake I did. DO NOT BUY THIS PRODUCT!!!![9]

My Tamko Heritage Shingles are about 8 years old. Every time we have a strong front come in and high winds I loose shingles off my roof. Lost them twice the first year. The glue on the back doesn't stick, they start flapping and then rip off. Called about a warrenty and tamko wanted me to remove two complete shingles at my expense and mail them to them for a claim. If they found them defective maybe a prorated warrenty on the shingles and labor at my expence! I would never use any tamko product again and will tell anyone looking to do a roof not to use their products!! Not a very reputable company in my oppinion.[10]

Had a guy install these Tamko heritage shingles about 3 years ago. Good price. I got a steep roof. Now I got shingles falling out. Roofer says Shingle problem. Tamko says call the roofer. Not sure what to do now.[11]

Did my research, put on the best roof I ever have in June of 2006. Chose the Tamko Heritage 30 ar shingle and put them over a Titanium underlayment. Installed them myself with a professional roofer running the nail gun at my side. Roof looked great till I did my inspection this summer. Edges not stuck down, curling shingles, separated shingles, cracked shingles. Now what? The whole west side looks horrible and I am sure water is now getting in. I contacted the Tamko company. Nothing yet. But it sounds to me from all the reviews and complaints I have read here and elsewhere that I will probably get the runaround from them. Don't think I will purchase Tamko shingles again.[12]

Built a new home in 2007 and our national builder used Tamko Heritage 30 year shingles. We've had to replace shingles 6 times since we moved in - they keep

---

[9]    *Tamko Roofing Products*, COMPLAINTS.COM,
http://www.complaints.com/directory/2005/october/19/38.htm (last visited June 10, 2014).
[10]    *Consumer Reviews of Tamko shingles*, THE ROOFERY,
http://www.roofery.com/shingles/reviews/tamko/ (last visited June 10, 2014).
[11]    *Consumer Reviews of Tamko shingles*, THE ROOFERY,
http://www.roofery.com/shingles/reviews/tamko/2/ (last visited June 10, 2014).
[12]    *Id.*

flying off in every storm. They were installed correctly and in the summer. They should have bonded together but they are built so cheap that they don't have enough sticky stuff. Don't waste your money on Tamko shingles. I think the Better Business Bureau needs to be aware of how this company operates. Rude 'customer service' lady and they don't honor their warranty or stand behind their product.[13]

Buyer beware... Of Tamko roofing shingles!!! We had the Heritage 40 yr. Shingles installed by a reputable contractor in 2000. Beginning in 2008 we had massive black streaking on front of our home, green mold growing under our dormer windows, grit flowing from the shingles into our gutters (which now are a mess also). We jumped through all of Tamko's hoops as dictated by their obnoxious snotty residential "customer service" girl. Today we received their response: nothing to do with their product -- they say our roof wasn't installed correctly. We are looking into a class action lawsuit -- unbelievable!!![14]

28.    Defendant should have or could have reasonably expected that Plaintiffs and members of the Class would be adversely affected by defective shingles as a result of using the shingles in a foreseeable way on their homes or other structures.

**Failure to Warn**

29.    Defendant failed to properly design, test, and manufacture its shingles.  The shingles reached the consuming public, including Plaintiffs, without substantial change or alteration and without warning of the defects alleged herein.

30.    Upon information and belief, Defendant was aware that problems existed with its shingles but did not provide warnings with the shingles or otherwise warn consumers, installers and/or distributors of the problems or dangers that it knew existed.  In fact, to this day, Defendant has concealed its knowledge of the defects and the potential defects in its shingles from the public.

31.    Defendant never informed Plaintiffs, or other consumers of its shingles, of the

---

[13]    *Id.*
[14]    *Consumer Reviews of Tamko shingles*, THE ROOFERY, http://www.roofery.com/shingles/reviews/tamko/3/ (last visited June 10, 2014).

defective nature of its shingles and the resultant inability of such products to last for the periods for which they would reasonably be expected to last, that is, for the length of the limited warranties they were seemingly arbitrarily given.

32.     To this day, Defendant has not recalled its defective shingles.

**Inadequate Testing**

33.     Upon information and belief, Defendant did not test the shingles in their anticipated environments before selling them to the public.

34.     Upon information and belief, Defendant conducted inadequate testing, quality control and research and development on the shingles and failed to test them for things that they knew or should have known would result in their premature failure.

35.     Upon information and belief, Defendant failed to investigate or test whether various conditions would lead to premature failure of the shingles.

**Defendant's Shingle Warranty**

36.     Defendant sold and sells warranties with their Heritage® shingles for various periods of time -- the longest being 50 years. The warranties are marketed and promoted and create an expectation and belief within the industry, and with ordinary consumers, that the shingles will last as long as the warranty period.  The warranty furthers these expectations by guaranteeing that a shingle will last for a specified period of time.

37.     Defendant makes, *see* www.tamko.com, the following representations concerning its warranties:

> Outstanding Limited Warranty Support
> TAMKO® backs each of its offerings with extensive Limited Warranty support.

***

Coverage Performance and protection
The beauty of your roof is only half the story. Beyond the curb appeal, you
need a roof that performs and protects. Heritage Vintage shingles offer a
Limited Warranty† with the longest up-front protection available and are UL
listed for Class A Fire Resistance and UL Wind Resistance.

\*\*\*

**THE OVERALL VALUE OF TAMKO'S LIMITED WARRANTY IS
CLEAR.**

38.     As part of its warranty, Defendant states that its shingles meet the following

industry standards: ASTM D3462, ASTM D3161 Class F (110 MPH), ASTM D7158 Class H

(110 MPH), UL 2390/ASTM D6381 Class H (150 MPH), Class 4 Impact Resistant and UL 790

Class A Fire Resistance.

39.     The proposed Class was generally charged more money to purchase shingles with

a longer warranty.

40.     Upon information and belief, Defendant established a warranty period to be

advertised and guaranteed for its shingles without conducting appropriate testing to determine if

the warranty period was supported by actual or simulated use.

41.     Upon information and belief, Defendant has received a litany of complaints from

consumers, such as Plaintiffs and other members of the Class.  Defendant has refused to convey

effective notice to consumers concerning defects with its shingles, repair defective roofs fully, or

repair property damaged by the premature failure of its product.

42.     Defendant's response to customers' warranty submissions is woefully inadequate

under these circumstances in that it limits the recovery of Plaintiffs and members of the Class to

replacement costs of individual shingles piece-by-piece and excludes costs of labor to replace the

shingles.

**Plaintiffs' Facts**

**Plaintiff Richard Disher**

43.     Plaintiff Richard Disher is the current owner of a home located in Alton, Illinois.

44.     In approximately April 2005, Mr. Disher purchased TAMKO Heritage® 30 shingles from Fisher Lumber, located at  210 N. Shamrock, East Alton, Illinois 62024, and had them installed on his home.

45.     Mr. Disher's TAMKO shingles are prematurely curling, degranulating and generally deteriorating to a point that necessitates replacement.

46.     At the time Mr. Disher purchased the shingles, Defendant represented, marketed, and created the expectation and belief that they would last for at least 30 years.  Mr. Disher decided to install this particular type and style of shingle based in part on Defendant's 30 year warranty.

47.     In approximately summer 2013, Mr. Disher was informed by a friend (a union contractor by profession), that his shingles were defective and that he should contact the company to file a warranty claim.

48.     On or about March 2014, Mr. Disher filed a warranty claim with Defendant. When Mr. Disher did not hear back from Defendant, he called the company on May 13, 2014 and was told that no materials had been received. After contesting this fact, Defendant finally admitted to receiving Mr. Disher's warranty claim information and sent him a settlement certificate for 15 of the 21 squares of shingles needed for Mr. Disher to reroof his home.

49.     In order to accept the settlement certificate and check, Mr. Disher was required to sign a "release form" that would waive any claim to further compensation related to Defendant's defective product.  Mr. Disher refused to cash the check or return the "release form" to Defendant.

50.     The problems with Mr. Disher's roof will force him to prematurely replace the roof at his own expense to avoid further damage to his home.  Had his consumer expectations been met, the costs associated with such replacement would not be expected to be incurred for at least another two decades.

**Plaintiff Eric Kline**

51.     Plaintiff Eric Kline is the current owner of a home located in Denver, Colorado that contains Defendant's Heritage® 30 shingles.

52.     Mr. Kline's home was built in 2005, and Mr. Kline purchased the home in 2011. The shingles installed on Mr. Kline's roof were prematurely curling, degranulating and generally deteriorating to a point that necessitated replacement.

53.     On or about mid-February 2013, a contractor went onto Mr. Kline's roof to install solar panels and informed him that his shingles were deteriorating to the extent that installation of solar panels was not advisable, given the potential for roof failure.

54.     Shortly thereafter, Mr. Kline engaged three separate roofing contractors to evaluate his roof, all of which determined that there was an underlying defect in the shingles, which warranted replacement. One of the contractors provided Mr. Kline and his wife with Defendant's warranty department's phone number and suggested that they contact Defendant.

55.     On or about that same time, Mr. Kline's insurance company inspected his roof and confirmed that his shingles were defective.  Because the shingles were deemed defective, the insurance company denied Mr. Kline's claim.

56.     On or about late February 2013, Mr. Kline's spouse contacted Defendant about filing a warranty claim.  She was told that they were ineligible for a warranty claim because they were a secondary owner of the home on which the shingles were installed.

57.     Following Defendant's further refusal to honor the warranty, in or around mid-March 2013, Mr. Kline had his shingles replaced on his home.  A GAF-certified shingle installer who replaced Mr. Kline's shingles, with GAF shingles, confirmed again that his shingles had premature granule loss.

58.     Mr. Kline's detached garage is still outfitted with Defendant's defective shingles.

**Plaintiff Dimitri Mishurov**

59.     Plaintiff Dimitri Mishurov is the current owner of a home located in Denver, Colorado that contains Defendant's Heritage® shingles.

60.     Mr. Mishurov's home was built in 2000.  Mr. Mishurov purchased the home in 2007.  The shingles installed on Mr. Mishurov's roof are prematurely curling, degranulating and generally deteriorating to a point that necessitates replacement.

61.     On or about January 2012, Mr. Mishurov was informed by a roofing contractor that his shingles required replacement.

62.     In or around February 2012, Mr. Mishurov was informed by his homeowners' insurance carrier that they would not compensate him for hail damage to his roof because the large amount of granular loss noticed with the shingles was a result of a defect.

63.     On or around March, 2012, Mr. Mishurov submitted a warranty claim through Defendant's warranty process that was summarily denied due to the fact that Mr. Mishurov was a secondary owner of the home on which the shingles were installed.

64.     In a letter addressed to Defendant, dated April 6, 2012, Mr. Mishurov complained about the denial of his warranty claim despite the fact that numerous professionals (and his insurance carrier) had informed him that his roofing was defective and needed to be replaced. Reasonably, Mr. Mishurov additionally requested that Defendant re-evaluate his claim.

65.     On May 7, 2012, Defendant responded to Mr. Mishurov letter and  claimed that he was ineligible for a warranty claim because he was a secondary owner of the home on which the shingles were installed.

66.     Thereafter, Mr. Mishurov submitted additional information to Defendant in response to the May 7 letter.  On September 5, 2013, Mr. Mishruov received another letter from Defendant denying his warranty claim for being a secondary owner.

**Plaintiff John O'Malley**

67.     Plaintiff John O'Malley is the current owner of the home located in Fisherville, Kentucky.

68.     On or about June 1, 2003, Mr. O'Malley installed Defendant's Heritage® 30 Shingles on his home. The shingles installed on Mr. O'Malley's roof are prematurely curling and separating from the roof, and generally deteriorating to a point that necessitates replacement.

69.     At the time Mr. O'Malley purchased the shingles, Defendant represented, marketed, and created the expectation that the shingles would last for at least 30 years. Mr. O'Malley decided to install this particular type and style of shingle based in part on Defendant's 30 year warranty.

70.     From approximately 2010 through 2013, Mr. O'Malley was required to hire a contractor to re-adhere at least two to three of Defendant's shingles to his roof per year.

71.     On or around August 2, 2013 Mr. O'Malley sent an e-mail to a Defendant representative identifying the problems with his shingles.  In response to this email, Mr. O'Malley was instructed to submit a warranty claim.

72.     In approximately August 2013, Mr. O'Malley filed a warranty claim with Defendant.

73.     On or around May 23, 2014, Mr. O'Malley received a denial from Defendant regarding his warranty claim.  Defendant denied Mr. O'Malley reimbursement or compensation under the terms of its warranty because (a) Defendant's analysis of sample shingles did not admit to any defect, (b) the limited warranty with regard to algae had allegedly expired, (c) the shingles were allegedly improperly nailed to the common bond area, (d) the limited warranty with regard to wind damage had allegedly expired, (e) several seventy (70) mile per hour wind events had allegedly occurred since installation, and (f) Mr. O'Malley had waited more than thirty (30) days from the discovery of the damage to make the warranty claim.

74.     The problems with Mr. O'Malley's roof are so bad that he will need to prematurely replace the roof at his own expense in order to avoid further damage to his home. Had the consumer expectations been met, the cost associated with replacement would not be expected to be incurred for another two decades.

### ESTOPPEL FROM PLEADING THE STATUTE OF LIMITATIONS

75.     Defendant knew that its shingles were defective prior to the time of their sale, and intentionally concealed material information and the truth concerning its products from Plaintiffs, members of the Class and the general public, while continually marketing and promoting the shingles. Defendant's acts of fraudulent concealment include failing to disclose that Defendant's shingles were defectively manufactured and would deteriorate in less than its expected lifetime, leading to damage.

76.     Because the defects in the Defendant's shingles are latent and not detectable until manifestation, and given the locations where Defendant's shingles are foreseeably placed and therefore difficult to view, defects are difficult to detect.  Plaintiffs and the Class members were not reasonably able to discover that Defendant's shingles were defective and unreliable until

recently, despite their exercise of due diligence.

77.     Plaintiffs had no reasonable way to discover this defect until just before Plaintiffs filed their original complaint.

78.     Defendant had a duty to disclose that its shingles were defective, unreliable and inherently flawed in its design and/or manufacture and would fail within its expected period of use, resulting in significant damages and eventually catastrophic failure.

## CLASS ACTION ALLEGATIONS

79.     Plaintiffs seek to bring this case as a class action, under Federal Rule of Civil Procedure 23, on behalf of themselves and all others similarly situated.  The proposed Class is defined as:

Nationwide Class:

> All persons, trusts, corporations, partnerships, associations, and/or entities in the United States who are owners of real property on which TAMKO® Heritage® shingles are installed. Excluded from the Class are TAMKO®, any entity in which TAMKO® has a controlling interest or which has a controlling interest of TAMKO®, and TAMKO®'s legal representatives, assigns and successors. Also excluded are the judge to whom this case is assigned and any member of the judge's immediate family.

80.     Alternatively to the Nationwide Class claims, Plaintiffs assert, under Federal Rule of Civil Procedure 23, Illinois, Colorado and Kentucky state Classes defined as:

Illinois Class:

> All persons, trusts, corporations, partnerships, associations, and/or entities in Illinois who are owners of real property on which TAMKO® Heritage® shingles are installed. Excluded from the Class are TAMKO®, any entity in which TAMKO® has a controlling interest or which has a controlling interest of TAMKO®, and TAMKO®'s legal representatives, assigns and successors. Also excluded are the judge to whom this case is assigned and any member of the judge's immediate family.

Colorado Class:

All persons, trusts, corporations, partnerships, associations, and/or entities in Colorado who are owners of real property on which TAMKO® Heritage® shingles are installed. Excluded from the Class are TAMKO®, any entity in which TAMKO® has a controlling interest or which has a controlling interest of TAMKO®, and TAMKO®'s legal representatives, assigns and successors. Also excluded are the judge to whom this case is assigned and any member of the judge's immediate family.

Kentucky Class:

All persons, trusts, corporations, partnerships, associations, and/or entities in Kentucky who are owners of real property on which TAMKO® Heritage® shingles are installed. Excluded from the Class are TAMKO®, any entity in which TAMKO® has a controlling interest or which has a controlling interest of TAMKO®, and TAMKO®'s legal representatives, assigns and successors. Also excluded are the judge to whom this case is assigned and any member of the judge's immediate family.

81.     Plaintiffs reserve the right to amend or alter the above Classes.

82.     The Classes described in this Complaint are jointly referred to as "Class."

**Numerosity**

83.     The use of Defendant's shingles have damaged and continue to damage a vast number of persons and entities who own homes, apartments, office buildings and other structures in which its shingles are installed, in Illinois, Colorado, Kentucky and throughout the United States.  The members of the Class are so numerous that joinder of all members is impracticable.

84.     The exact number of Class members is unknown as such information is in the exclusive control of Defendant.  However, given the widespread use of Defendant's shingles in the United States, and the size and reach of its operations, Plaintiffs believe the Class consists of thousands of consumers statewide and nationwide, making joinder of Class members impracticable.

**Commonality and Predominance**

85.     The claims of Plaintiffs and members of the Class rely upon common questions of

law and fact. Plaintiffs and all Class members are also entitled to a common form of relief, namely damages.

86.     The harm that Defendant's shingles has caused, is causing, and will cause is substantially uniform with respect to all Class members. Common questions of law and fact that affect the Class members include but are not limited to:

a.     Whether Defendant has sold a defectively designed product;

b.     Whether Defendant has failed to prevent damages caused by the defective product it designed, manufactured and sold into the stream of commerce;

c.     Whether Defendant has failed to warn consumers about the reasonably foreseeable dangers of using Defendant's  shingles;

d.     Whether Defendant has breached express warranties.

e.     Whether Defendant's shingle failed their essential purpose.

f.     Whether Defendant has breached an implied warranty of merchantability;

g.     Whether Defendant has breached the warranty of fitness for a particular purpose;

h.     Whether Defendant acted negligently;

i.     Whether Defendant's actions violated consumer fraud acts and/or deceptive trade practice acts;

j.     Whether Defendant was unjustly enriched by the sale of the defective shingles;

k.     Whether Defendant's conduct should be enjoined; and

l.     Whether the members of the Class have sustained damages and, if so, the proper measure of such damages.

87.     These common questions of law and fact predominate over any individual questions that may exist or arise.

**Typicality**

88.     Plaintiff's claims are typical of absent Class members' claims.  All claims arise from the same factual background and legal theories.  Plaintiffs and all members of the Class sustained damages arising out of Defendant's wrongful course of conduct.  The harms suffered by Plaintiffs are typical of the harms suffered by the members of the Class, and Plaintiffs and other members of the Class have an interest in preventing Defendant from engaging in such activity in the future.

**Adequacy of Representation**

89.     Plaintiffs will fairly and adequately protect the interests of the Class.  Plaintiffs have retained counsel competent and experienced in class action and product liability litigation and have no conflict of interest with other Class members in the maintenance of this class action. Plaintiffs have no relationship with Defendant except as consumers who purchased Defendant's products.  Plaintiffs will vigorously pursue the claims of the Class.

**Superiority**

90.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy because joinder of all members is impracticable.  Furthermore, because the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impracticable for the Class to individually seek redress for the wrongs done to them.   Plaintiffs believe that Class members, to the extent they are aware of their rights against Defendant herein, would be unable to secure counsel to litigate their claims on an individual basis because of the relatively small nature of the individual damages, and that a class action is the only feasible means of recovery for the Class members. Individual actions also would present a substantial risk of inconsistent decisions, even though each Class

member has an identical claim of right against Defendant.

**Manageability**

91.     Plaintiffs envision no difficulty in the management of this action as a class action. The advantages of maintaining the action as a class action far outweigh the expense and waste of judicial effort that would result from hundreds or thousands of separate adjudications of these issues for each member of the Class or the injustice that would result if individual actions could not be brought due to lack of notice or resources.

92.     Through the actions and omissions described herein Defendant has acted or failed to act on grounds that apply generally to the Class, so that final injunctive or declaratory relief is proper as to the Class as a whole.

93.     Class treatment further ensures uniformity and consistency in results and will provide optimum compensation to members of the Class for their injuries.

## CAUSES OF ACTION

### First Cause of Action
### (Strict Liability – Design Defect)

94.     Plaintiffs reallege and incorporate by reference each of the paragraphs above.

95.     Defendant designed its shingles to be used and installed on the Plaintiffs' and Class members' homes and other structures.

96.     The design of Defendant's shingles, including the formulation and composition of the material making up the shingle, was defective and, because of such design defects, Defendant's shingles were unreasonably dangerous to the consuming public, including Plaintiffs and members of the Class.  In violation of Section 402A of the Restatement (Second) of Torts, Defendant's shingles posed a substantial likelihood of harm at the time they were sold.

97.     The design defect in Defendant's shingles existed at the time the shingles were

sold and/or when the shingles left Defendant's possession or control.

98.     The foreseeable risks inherent in the design of Defendant's shingles outweigh the benefits of their design.

99.     The Defendant's shingles did not meet the reasonable expectations of Plaintiffs as the consumers of the shingles due to the defective design of the shingles which the Defendant knew or should have known that the shingles created significant risks of harm to consumers. Upon information and belief, reasonable economically and technically feasible design alternatives existed to make the Defendant's shingles safer for their intended use at the time of their design.

100.     Defendant's shingles were expected to be and were installed in consumers' homes, including Plaintiffs' homes, without substantial change in their condition from the time of its design, manufacture and sale.

101.     Defendant is strictly liable for the injuries that the defective shingles have caused the Plaintiffs and members of the Class.

102.     The injuries caused to Plaintiffs as a result of the Defendant's defective shingles could and should have been reasonably foreseen by Defendant.

103.     As a direct and proximate result of the defective design of the Defendant's shingles, Plaintiffs and the Class have incurred and will incur damages in an amount to be proven at trial.

**Second Cause of Action**
**(Strict Liability – Manufacturing Defect)**

104.     Plaintiffs reallege and incorporate by reference each of the paragraphs above.

105.     Defendant manufactured its shingles to be used and installed on Plaintiffs' and Class member's homes and other structures.

106.     When the shingles left Defendant's control, they deviated in a material way from

their design and/or performance standards. As a result, the Defendant's shingles were unreasonably dangerous to the consuming public, including the Plaintiffs.

107.    The Defendant's shingles were defectively manufactured and posed a substantial likelihood of harm at the time they were sold and/or when the shingles left Defendant's possession or control.

108.    Defendant's shingles were expected to be and were installed in consumers' homes, including Plaintiffs' homes, without substantial change in their condition from the time of their manufacture and sale.

109.    Defendant is strictly liable for the injuries that the defective shingles have caused Plaintiffs and members of the Class.

110.    The injuries caused to Plaintiffs as a result of the Defendant's defective shingles could and should have been reasonably foreseen by Defendant.

111.    As a direct and proximate result of Defendant's defective manufacture of the shingles, Plaintiffs have incurred and will incur damages in an amount to be proven at trial.

<u>**Third Cause of Action**</u>
**(Strict Liability – Failure to Warn)**

112.    Plaintiffs reallege and incorporate by reference each of the paragraphs above.

113.    Defendant designed and manufactured the roofing shingles used and installed on Plaintiffs' and Class members' homes and other structures.

114.    When Plaintiffs and members of the Class bought Defendant's shingles, they were not aware of the dangerous and destructive nature of the shingles.  Defendant knew or had reason to know that those consumers would not realize the dangerous condition of the shingles.

115.    The risks inherent in the design of Defendant's shingles outweigh the benefits of the design.  Further the Defendant's shingles did not meet the reasonable expectations of Plaintiffs

as the consumer of the shingles due to inadequate warnings or instructions because Defendant knew or should have known that the shingles created significant risks of harm to consumers, and they failed to adequately warn consumers and class members of such risks.  Defendant did not provide, and Defendant's shingles did not contain adequate warnings and, as a result, the shingles were unreasonably dangerous to the consuming public, including the Plaintiffs and members of the Class.

116.     The defect in Defendant's shingles, including the lack of warnings, existed at the time the Defendant's shingles were sold and/or when the shingles left Defendant's possession or control.

117.     Defendant's shingles were expected to be and were installed on consumers' homes, including the homes of Plaintiffs and members of the Class, without substantial change in their condition from the time of their manufacture or sale.

118.     Defendant is strictly liable for the damage that its defective shingles and its lack of warnings have caused Plaintiffs.  Such harm would not have been suffered if Defendant had provided adequate warnings or instructions.

119.     The injuries caused to Plaintiffs and Class members as a result of the Defendant's defective shingles could and should have been reasonably foreseen by Defendant.

120.     As a direct and proximate result of Defendant's failure to give adequate warnings or instructions regarding any reasonably foreseeable problems, Plaintiffs and members of the Class have incurred and will incur damages in an amount to be proven at trial.

**Fourth Cause of Action**
**(Negligence)**

121.     Plaintiffs reallege and incorporate by reference each of the paragraphs above.

122.     Defendant   designed,   developed,   formulated,   tested,   and   manufactured

25

Defendant's shingles for use and installation on homes and other structures.

123.    Defendant's shingles are unreasonably dangerous when used on homes and other structures.

124.    Defendant owed a duty to the consuming public to design, develop, formulate, test, and manufacture a product reasonably free of defect.  Defendant further had a duty not to put defective and dangerous products such as its shingles on the market.

125.    At the time Defendant was selling its shingles, Defendant was aware, or reasonably should have been aware, of the foreseeable risks associated with the use of its shingles.

126.    Defendant was negligent and breached its duty to the consuming public, including Plaintiffs, by designing, developing, formulating, testing, and manufacturing Defendant's shingles that, under ordinary use, are subject to deterioration, general embrittlement, cracking, degranulation, dislodging and are otherwise defective.

127.    The injuries sustained by Plaintiffs and members of the Class could have been reasonably foreseen by Defendant.

128.    As a direct and proximate result of Defendant's negligent acts and/or omissions, Plaintiffs and members of the Class have incurred and will incur damages in an amount to be proven at trial.

## Fifth Cause of Action
### (Negligent Failure to Warn)

129.    Plaintiffs reallege and incorporate by reference each of the paragraphs above.

130.    Defendant owed a duty to the consuming public to design, develop, formulate, test, and manufacture a product reasonably free of defect.

131.    Defendant had a duty to disclose to the consuming public the foreseeable risks associated with the use of its shingles on homes and other structures.

132.     At the time Defendant was selling its shingles, Defendant was aware, or reasonably should have been aware, of the foreseeable risks associated with the use of its shingles on homes and other structures.

133.     Defendant was negligent in that it knew or by the exercise of reasonable care should have known that Defendant's shingles, under ordinary use in homes and other structures, might be harmful or injurious to the consuming public, including the Plaintiffs and members of the Class, but failed to use reasonable care to warn Plaintiffs and members of the Class and the consuming public of the potentially harmful and injurious effects in the manner that a reasonable person would under the same or similar circumstances.

134.     Defendant failed to exercise reasonable care and give adequate warnings or instructions to consumers about the reasonably foreseeable dangers that could result from using Defendant's shingles under reasonably foreseeable conditions.

135.     Consumers using and installing Defendant's shingles were not aware of the dangerous nature of them.

136.     Plaintiffs were not aware of the dangerous and destructive nature of the shingles and Defendant knew or had reason to know that consumers would not realize the dangerous condition of them.

137.     Due to Defendant's failure to provide consumers with adequate warnings or instruction about the dangerous and destructive nature of the shingles, Plaintiffs have been harmed.  Such harm would not have been suffered if Defendant provided adequate warnings or instructions.

138.     As a direct and proximate result of Defendant's negligent acts and/or omissions, the Plaintiffs and members of the Class have incurred and will incur damages in an amount to be

proven at trial.

### Sixth Cause of Action
#### (Breach of the Implied Warranty of Merchantability)

139.   Plaintiffs reallege and incorporate by reference each of the paragraphs above.

140.   Defendant designed, manufactured, and sold Defendant's shingles knowing that they would be installed on homes, and other structures owned by Plaintiffs and members of the Class.

141.   Defendant is a merchant of the shingles and marketed, promoted, and sold the shingles to the consuming public.

142.   Defendant expected the consuming public, including Plaintiffs and Class members, to install and use Defendant's shingles on their homes and other structures and such use was reasonably foreseeable.  The shingles sold by Defendant were not merchantable at the time Defendant sold them.

143.   Defendant warranted to the Plaintiffs and members of the Class that Defendant's shingles were of a quality that would pass without objection in the trade and was at least fit for the ordinary purposes for which such goods were used, and in all other respects was of merchantable quality.

144.   Plaintiffs and members of the Class relied on that implied warranty.

145.   Defendant breached its implied warranty of merchantability because Defendant's shingles were not of merchantable quality; deteriorated, cracked and prematurely failed; and were unfit for the ordinary purposes for which they were designed and used.

146.   Given where Defendant's shingles are installed, affixed to the roof, any limitation of remedies claimed by Defendant must fail of its essential purpose in that if the shingles fail, significant damage to property will occur and the replacement of the failed shingles and the

repairs necessitated by the failure cannot be accomplished without considerable consequential cost and expense.

147.    Defendant has been notified by Plaintiffs of the defective nature of its shingles and of its breach of warranty within a reasonable time of discovery, and timely notice was tendered to the Defendant pursuant to the applicable provisions of the Uniform Commercial Code and pursuant to 810 ILCS 5/2-607(3)(a) by the filing of this Complaint and the service of the same upon the Defendant.

148.    As a direct and proximate result of Defendant's breach of the implied warranty of merchantability, Plaintiffs and members of the Class have been damaged in an amount to be proven at trial.

<u>**Seventh Cause of Action**</u>
**(Breach of the Implied Warranty of Fitness for a Particular Purpose)**

149.    Plaintiffs reallege and incorporate by reference each of the paragraphs above.

150.    Defendant designed, manufactured, and sold its shingles knowing that they would be installed on the homes and other structures owned by Plaintiffs and members of the Class.

151.    Defendant marketed, promoted, and sold the Defendant's shingles for installation and use on homes and other structures.

152.    Defendant knew that the shingles it designed, manufactured, and created were to be used by Plaintiffs, Class members and other consumers on their homes and other structures.

153.    Plaintiffs relied on Defendant's skill and/or judgment to furnish the shingles for use on their homes, and other structures which they owned.

154.    Defendant impliedly warranted that roofs using Defendant's shingles would be fit for the particular purpose of providing aesthetically pleasing protection from the elements for homes, and structures owned by Plaintiffs and members of the Class.

155.    The Defendant's shingles were not fit for the particular purpose for which they were intended and became brittle, cracked, deteriorated and prematurely failed when installed on Plaintiffs' and Class member's homes.

156.    Defendant was properly notified of the defective nature of its shingles and of its breach of the implied warranty of fitness for a particular purpose within a reasonable time of its discovery, and timely notice was tendered to the Defendant pursuant to the applicable provisions of the Uniform Commercial Code and pursuant to 810 ILCS 5/2-607(3)(a) by the filing of this Complaint and the service of the same upon the Defendant.

157.    Given where Defendant's shingles were installed – permanently affixed to the roof – any limitation of remedies claimed by Defendant must fail of its essential purpose in that if the shingles fail, significant damage to property will occur and the replacement of the failed shingles and the repairs necessitated by the failure cannot be accomplished without considerable consequential cost and expense.

158.    As a direct and proximate result of Defendant's breach of implied warranty of fitness for a particular purpose, Plaintiffs and members of the Class have been damaged in an amount to be proven at trial.

**Eighth Cause of Action**
**(Express Warranty)**

159.    Plaintiffs reallege and incorporate by reference each of the paragraphs above.

160.    Pursuant to Defendant's express warranty, Defendant is obligated to provide Plaintiffs and the Class members with shingles that were of merchantable quality and fit for the ordinary use and purpose for which they were intended.  Defendant was further obligated pursuant to the express warranty to repair or replace any defects or problems with the shingles that Plaintiffs and members of the Class experienced.  In exchange for these duties and obligations,

Defendant received payment of the purchase price for the shingles from Plaintiffs and the Class.

161.     Defendant failed to perform as required under its purported warranties and breached said contracts and agreements by providing Plaintiffs and the Class with shingles that were defective and unfit for their intended use and failed to appropriately repair or replace the shingles.

162.     Defendant was properly notified of the defective nature of its shingles and of its breach of the express warranty of fitness for a particular purpose within a reasonable time of its discovery, and timely notice was tendered to the Defendant pursuant to the applicable provisions of the Uniform Commercial Code and pursuant to 810 ILCS 5/2-607(3)(a) by the filing of this Complaint and the service of the same upon the Defendant.

163.     As a result of the foregoing, Plaintiffs and the Class members are entitled to compensatory damages in an amount to be proven at trial.

**Ninth Cause of Action**
**(Unjust Enrichment)**

164.     Plaintiffs reallege and incorporate by reference each of the paragraphs above.

165.     As a result of the wrongful conduct alleged herein, Defendant received a benefit, profits from the sale of defective shingles, at the expense of Plaintiffs and members of the Class.

166.     Under the circumstances as described herein, it would be unjust for Defendant to retain the benefits it received at Plaintiffs' expense.

**Tenth Cause of Action**
**(Failure of Essential Purpose)**

167.     Plaintiffs reallege and incorporate by reference each of the paragraphs above.

168.     When Defendant sold its shingles to Plaintiffs and the Class, it offered a warranty promising certain remedies if a defect is noticed.

31

169.    Plaintiffs and the Class have afforded Defendant ample opportunities to repair the complained-of defects and Defendant has failed to remedy same in a reasonable amount of time. Plaintiffs put Defendant on notice, by way of warranty claims, that their shingles were problematic.

170.    Plaintiffs and the Class have sustained consequential or incidental losses that would not have been sustained but for Defendant's failure of remedy to repair or replace.

171.    The consequential or incidental losses sustained by Plaintiffs and the Class were not within the contemplation of the parties, and therefore should not be prohibited when such bargained for remedy fails of its essential purpose.

172.    Because Defendant's warranty fails in its essential purpose, Plaintiffs and the Class are entitled to recover available damages.

173.    Defendant's shingles were defective at the time they were acquired by Plaintiffs and members of the Class.

174.    Defendant knew that their shingles were defective, yet continued to represent that they were free of defects. Plaintiffs and members of the Class had no ability to detect the defect nor received notice thereof.

175.    As a direct and proximate cause of the foregoing, Plaintiffs and the Class have suffered and will continue to suffer damages and losses as alleged herein in an amount to be determined at trial.

### Eleventh Cause of Action
### (Fraudulent Concealment)

176.    Plaintiffs reallege and incorporate by reference each of the paragraphs above.

177.    At all times mentioned herein, Defendant, through its experience, was in a position of superiority to Plaintiffs and the Class members and had the duty and obligation to

disclose to Plaintiffs the true facts and their knowledge concerning the its shingles; that is that said product was defective, would prematurely fail, and otherwise were not as warranted and represented by Defendant. Defendant made the affirmative representations as set forth in this Complaint to Plaintiffs, the Class, and the general public prior to the date Plaintiffs purchased the shingles, while at the same time concealing the material defects described herein.  All of these facts were material to consumers' (such as Plaintiffs') purchase decisions.

178.    The material facts concealed or not disclosed by Defendant to Plaintiffs and the Class are material facts in that a reasonable person would have considered those facts to be important in deciding whether or not to purchase Defendant's shingles.

179.    At all times mentioned herein, Defendant intentionally, willfully, and maliciously concealed or suppressed the facts set forth above from Plaintiffs and with the intent to defraud as herein alleged (i.e., reported that its warranties for certain time periods would be honored and that its shingles meet ASTM and industry requirements).

180.    At all times mentioned herein, Plaintiffs and members of the Class reasonably relied on Defendant to disclose those material facts set forth above.  If Defendant had disclosed the above facts to Plaintiffs and Class and had they been aware of said facts, they would either negotiated additional warranty coverage, negotiated a lower price to reflect the risk or simply avoided the risk all together by purchasing different shingles.

181.    Defendant continued to conceal the defective nature of its shingles even after members of the Class began to report problems and submit warranty claims.  Indeed, Defendant continues to cover up and conceal the true nature of the problem.

182.     As a result of the previous and continued concealment or suppression of the facts set forth above, Plaintiffs and the Class members sustained damages in an amount to be determined at trial.

### Twelfth Cause of Action
### (Violation of Illinois Consumer Fraud and Deceptive Business Practices Act and Substantially Similar Laws of Certain Other States)
### (Illinois Class Only)

183.     Plaintiffs reallege and incorporate by reference each of the paragraphs above.

184.     The conduct described in this Complaint constitutes a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (the "CFA"), 815 Ill. Comp. Stat. 505/1 *et seq*, and substantially similar state consumer protection statutes.

185.     Defendant engaged in unfair or deceptive practices in violation of Illinois' Consumer Fraud and Deceptive Business Practices Act  815 Ill. Comp. Stat. 505/1 *et seq.* (2008) (hereinafter, "CFA") when it (1) represented the shingles were durable and free of defects and ASTM acceptable when, at best, it lacked credible evidence to support  those claims, and, at worst, knew the shingles would fail prematurely, were not suitable for use as an exterior roofing product, and otherwise were not as warranted and represented by Defendant; (2) failed to disclose to, or concealed from, consumers, installers and distributors material facts about the defective nature of the shingles; (3) failed to disclose its own knowledge of the defective nature of the shingles; and (4) limited its warranty obligations in an unfair and unconscionable way in light of its failure to disclose the defective nature of the shingles.

186.     Defendant either knew or should have known its shingles were defective, would fail prematurely and were not as warranted and represented by Defendant.

187.    Defendant's conduct and omissions described herein repeatedly occurred in Defendant's trade or business and were capable of deceiving a substantial portion of the consuming public.

188.    The facts concealed or not disclosed by Defendant are material facts in that Plaintiffs and any reasonable consumer would have considered those facts important in deciding whether to purchase the shingles or purchase homes or structures with roofs constructed with the shingles.  Had Plaintiffs and the Class known the shingles were defective (and were not ASTM acceptable), they would not have purchased the shingles or they would have either negotiated additional warranty coverage, negotiated a lower price to reflect the risk or simply avoided the risk all together by purchasing different shingles.

189.    Defendant intended that Plaintiffs and the Class would rely on the deception by purchasing its shingles, unaware of the undisclosed material facts.  Defendant knew that Plaintiffs and the Class would rely on its product literature and advertisments, statements made on its bundle wrappers and other representations.  This conduct constitutes consumer fraud within the meaning of the various consumer protection statutes.

190.    Defendant's unlawful conduct is continuing, with no indication that Defendant will cease.

191.    As a direct and proximate result of the deceptive, misleading, unfair and unconscionable practices of the Defendant set forth above, Plaintiffs and Class Members are entitled to actual damages, compensatory damages, penalties, attorney's fees and costs as set forth in Section 10a of the CFA.

192.    The Defendant's deceptive, misleading, unfair and unconscionable practices set forth above were done willfully, wantonly and maliciously entitling Plaintiffs and Class members to an award of punitive damages.

**Fourteenth Cause of Action**
**(Colorado Products Liability Act, Colo. Rev. Stat. §§ 13-21-401, *et seq*.)**
**(Colorado Class Only)**

193.    Plaintiffs reallege and incorporate by reference each of the paragraphs above.

194.    At all relevant times, Defendant was the designer, developer, tester, manufacturer, distributor, marketer, and seller of shingles.

195.    Defendant knew and/or should have known and expected that the shingles would reach the ultimate user and/or consumer without substantial change, and in the condition in which they were sold by Defendant.

196.    At all relevant times, Defendant owed a duty of reasonable care to Plaintiffs and the Class in the design, development, manufacture, distribution, marketing, sale, and selection of materials for the shingles.  It was foreseeable to Defendant that the defective, dangerous, unsafe, and unfit shingles would cause damages to the end users of the product.

197.    Defendant breached this duty by, among other things:

A.    Manufacturing, designing, developing, distributing, marketing, selling and placing into the stream of commerce the defective, dangerous, unsafe shingles;

B.    Failing to adequately and properly inspect and test the shingles;

C.    Failing to adequately and properly select and utilize non-defective materials;

      D.     Failing to adequately and properly design the components that would operate and/or perform in a non-defective manner; and

      E.     Failing to adequately and properly warn of the damages arising from the installation and use of the shingles.

198.    But for the Defendant's conduct alleged herein and their breach of duty, Plaintiffs and the Class would not have suffered the damages and losses alleged herein.

199.    Defendant knew and/or should have known the inside of the units are prone to cracking, curling, degranulation and general deterioration after a short time, making it foreseeable to Defendant that failure of the unit and its component parts would cause damages to the end users.

200.    As a direct and proximate result of Defendant's acts and/or omissions as alleged herein, the Plaintiffs and the Class have sustained, are sustaining, and will sustain damages and losses as alleged herein.

**Fifteenth Cause of Action**
**(Violation of the Kentucky Consumer Protection Act ("KCPA"),**
**Ky. Rev. Stat. Ann. §§ 367.110 et seq.)**
**(Kentucky Class Only)**

201.    Plaintiffs reallege and incorporate by reference each of the paragraphs above.

202.    The KCPA declares unlawful any unfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce.  For purposes of the KCPA, unfair is construed to mean unconscionable.  *See* Ky. Rev. State. Ann. § 367.170.

203.    Defendant committed unfair, unconscionable, false, misleading, or deceptive acts or practices in the conduct of trade or commerce by selling, marketing, and distributing the defective shingles.

204.    Defendant committed unfair, unconscionable, false, misleading, or deceptive acts or practices in the conduct of trade or commerce by selling, marketing, and distributing the defective shingles.

205.    Defendant committed unfair, unconscionable, false, misleading, or deceptive acts or practices in the conduct of trade or commerce by concealing and/or failing to inform Plaintiffs and members of the Class and subclasses that the shingles were defective.

206.    Defendant committed unfair, unconscionable, false, misleading, or deceptive trade practices in the conduct of trade or commerce by falsely representing that the shingles are reliable, durable, dependable, long lasting, and meet or exceed the highest standards in the industry.

207.    Defendant committed unfair, unconscionable, false, misleading, or deceptive trade practices in the conduct of trade or commerce by making false representations regarding the quality of its warranties.  These unfair, unconscionable, false, misleading, or deceptive acts or practices caused damages to Plaintiffs and members of the Class and subclasses.

### Sixteenth Cause of Action
**(Declaratory and Injunctive Relief)**

208.    Plaintiffs reallege and incorporate by reference each of the paragraphs above.

209.    Plaintiffs, on behalf of themselves and putative Class members, seek a Court declaration of the following:

> A.    All Defendant's shingles have defects which cause them to fail, crack, degranulate, and deteriorate, resulting in damage to property and the necessity of the removal and replacement;
>
> B.    Defendant knew of the defects in its shingles and that the limitations contained in the warranties accompanying the shingles are unenforceable;
>
> C.    All Defendant's shingles have defects in workmanship and material that

cause failures;

D.      Defendant will re-audit and reassess all prior warranty claims on its

shingles, including claims previously denied in whole or in part, where the

denial was based on warranty or other grounds; and

E.      Defendant shall establish an inspection program and protocol to be

communicated to members of the Class, which will require Defendant to

inspect, upon request, a Class member's structure to determine whether

Defendant shingle failure is manifest.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, request the Court to enter judgment against Defendant, as follows:

A.      Enter an order certifying the proposed Class (and subclasses, if applicable), designating Plaintiffs as the named Class Representatives of the Class, and designating the undersigned as Class Counsel;

B.      Declare that Defendant is financially responsible for notifying all Class members of the problems with Defendant's products;

C.      Enter an order enjoining Defendant from further deceptive advertising, marketing, distribution, and sales practices with respect to its products, and requiring it to remove and replace Plaintiffs' and Class members' roofs with a suitable alternative roofing material of Plaintiffs' and Class members' choosing;

D.      Enter an award to Plaintiffs and the Class that includes compensatory, exemplary or punitive damages, and statutory damages, including interest thereon, in an amount to be proven at trial;

E.      Declare that Defendant must disgorge, for the benefit of the Class, all or part of the ill-gotten profits it received from the sale of its materials, or order it to make full restitution to Plaintiffs and the members of the Class;

F.      Enter an award of attorneys' fees and costs, as allowed by law;

G.      Enter an award of pre-judgment and post-judgment interest, as provided by law;

H.      Grant Plaintiffs and the Class leave to amend the Complaint to conform to the evidence produced at trial; and

I.      Grant such other or further relief as may be appropriate under the circumstances.

## JURY DEMAND

Pursuant to the Federal Rules of Civil Procedure, Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated:   June 26, 2014                    Respectfully submitted,

**THE DRISCOLL FIRM, P.**

By:   /s/ John J. Driscoll
     John J. Driscoll, #6276464
     john@thedriscollfirm.com
     Chris J. Quinn, #6310758
     chris@thedriscollfirm.com
     211 N. Broadway, 40th Floor
     St. Louis, MO 63102
     Telephone:  (314) 932-3232
     Facimile:  (314) 932-3233

     Gary D. McCallister
     **Gary D. McCallister & Associates, LLC**
     gdm@gdmlawfirm.com
     120 N. LaSalle, Suite 2800
     Chicago, Illinois 60602
     Telephone: 312-345-0611
     Facsimile: 312-345-0612
     **ARDC # 6219649**

**CUNEO GILBERT & LADUCA, LLP**
Charles J. LaDuca
charlesl@cuneolaw.com
Brendan S. Thompson
brendant@cuneolaw.com
8120 Woodmont Ave., Suite 810
Bethesda, MD 20814
Telephone:  202.789.3960
Facsimile:  202.789.1819

**AUDET & PARTNERS, LLP**
William Audet
waudet@audetlaw.com
Joshua C. Ezrin
jezrin@audetlaw.com
Theodore H. Chase
tchase@audetlaw.com
221 Main Street, Suite 1460
San Francisco, California 94105
Telephone: 415.568.2555
Facsimile:  415.576-1776

**HALUNEN & ASSOCIATES**
Clayton D. Halunen
halunen@halunenlaw.com
Melissa Wolchansky
wolchansky@halunenlaw.com
1650 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone:  612-605-4098
Facsimile:  612-605-4099

**LOCK RIDGE GRINDAL NAUEN P.L.L.P.**
Robert K. Shelquist
100 Washington Ave., S., Suite 2200
Minneapolis, MN 55401-2179
Telephone: (612) 339-6900
Facsimile: (612) 339-0981
rkshelquist@locklaw.com

*Attorneys for Plaintiffs*