# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| RICHARD DISHER, ERIC KLINE, | ) |
| JOHN O'MALLEY and | ) |
| DIMITRI MISHUROV, on behalf of | ) |
| themselves and all others similarly situated, | ) |
| | ) Case No. 14-CV-740-SMY-SCW |
| Plaintiffs, | ) |
| | ) |
| vs. | ) |
| | ) |
| TAMKO BUILDING PRODUCTS, INC., | ) |
| | ) |
| Defendant. | ) |

# MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Pending before the Court is Defendant Tamko Building Products, Inc.'s ("Tamko") Motion for Summary Judgment with Respect to the Claims of Plaintiff Richard Disher (Doc. 133). Plaintiff filed a response in opposition (Doc. 160). For the following reasons, the motion is **GRANTED in its entirety**.

## Background

Plaintiff Richard Disher purchased Tamko Heritage 30 Shingles in April 2005 from Fischer Lumber (Doc. 133-3, p. 86). At the time, Fischer Lumber sold both Tamko and GAF shingles (Doc. 133-2, p. 17). Disher purchased the shingles from Fischer Lumber at the recommendation of Chris Nolan, the contractor he hired to install the shingles on his roof (Doc. 133-3, pp. 116-117). He purchased the shingles based on their color and because they were architectural, which according to Disher, "is supposed to be good." *Id.*, pp. 126-129. Prior to purchasing the shingles, Disher observed "a big sign, a sign with a symbol that says 30 year

warranty." (Doc. 133-3, p. 88). He does not recall whether the sign contained the word "limited" (Doc. 133-3, pp. 129-130).

Disher expected the shingles would be covered for 30 years. *Id*. He did not inquire about the warranty at the time he purchased the shingles (Doc. 133-3, p. 129). Rather, he assumed that the warranty was a full replacement warranty (including replacement shingles and the labor necessary to install them) for 30 years (Doc. 133-3, pp. 104-105). Disher does not believe that he was provided a copy of the Limited Warranty before he purchased the shingles or at the time of sale (Doc. 159-1, p. 38). At the relevant time, Fischer Lumber did not routinely provide its customers with warranties at the point of sale; it only provided customers with warranties upon request (Doc. 159-1, pp. 65-66).

The shingles came with a Limited Warranty that provided a remedy for damages caused by manufacturing defects (Doc. 133-4). The warranty provided, in relevant part:

> Tamko Full Start Period: If, during the Full Start Period, Shingles are determined to have manufacturing defects which have directly caused leaks, Tamko will provide the Owner with a Material Certificate for replacement shingles (or, at Tamko's option, the Dollar Limit Per Square identified in Table 1) and a Labor Payment Certificate that may be used to pay the reasonable cost of installing replacement shingles, according to the terms of this limited warranty. This is Tamko's Maximum Liability during the Full Start Period.
>
> After the Full Start Period: If, after the end of the Full Start Period, Shingles are determined to have manufacturing defects which have directly caused leaks, Tamko's obligation is limited to providing the Owner with a Material Certificate for replacement shingles or, at Tamko's option, the Dollar Limit Per Square identified in Table 1. The Dollar Limit Per Square and the quantity of replacement shingles will be prorated over the life of this limited warranty. This is Tamko's Maximum Liability after the Full Start Period. Tamko is not responsible for the costs of labor for installing replacement shingles after the Full Start Period. Proration shall be determined by dividing the number of months remaining in the Term by the total number of months of the Term…
>
> Full Start Period is defined that the initial period of the Term during which Tamko's obligation is not prorated. The length of the Full Start Period is listed in Table 1.

Pursuant to Table 1 of the warranty, Disher's shingles were subject to a "full start" period of five years and a warranty term of 360 months (Doc. 133-4).

In 2013, after cleaning Disher's gutters, James Gold told Disher there was a problem with his shingles and that he should contact Tamko (Doc. 133-3, pp. 57-58). In March 2014, Disher filed a warranty claim with Tamko for "massive granular loss of shingles throughout the roof (Doc. 133-3, p. 68, Doc. 133-6). He indicated that the problem began on October 15, 2013, and that his roof was not leaking. *Id*.

After reviewing Disher's warranty claim, and in accordance with the terms of the Limited Warranty, Tamko provided him with a Materials Certificate covering 15 squares (or 70%) of replacement shingles (Doc. 133-3, p. 99). Tamko also offered Disher $100 compensation to cover the costs for the samples he submitted with his warranty claim. *Id*. at p. 70. Disher rejected the offer (Doc. 159-1, p. 40).

In January 2015, inspector Arthur Neumann inspected Disher's home (Doc. 133-7). In his report, Neumann indicated that the damage to the shingles was not consistent over the entire roof, and that no apparent water damage could be attributed to the roof or shingles.[1] *Id*. He also noted that flashing points on the chimney were cracked. *Id.*

## Discussion

Tamko contends that summary judgment is warranted on several grounds: (1) Disher's claim for breach of express warranty fails because Tamko did not breach the Limited Warranty; (2) Disher's claims for strict liability and negligence are barred by the economic loss doctrine; (2) Disher's consumer fraud claim fails because the evidence forecloses any claim that Tamko

---

[1] Disher's father also testified that he never observed any roof leaks at Disher's home (Doc. 133-10, pp. 28-29).

engaged in deception or fraudulent conduct; and (4) Disher's unjust enrichment claim fails because the Limited Warranty governs his relationship with Tamko.

Summary Judgment is "the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Johnson v. Cambridge Indus., Inc.,* 325 F.3d 892, 901 (7th Cir. 2003). Summary judgment is proper only if the moving party can demonstrate that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). The moving party bears the burden of establishing that no material facts are genuinely in dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party. *Lawrence v. Kenosha County,* 391 F.3d 837, 841 (7th Cir. 2004). Summary dismissal is warranted where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex,* 477 U.S. at 323.

**Express Warranty**

In a suit for damages for breach of an express written warranty, "the burden of proof is on the plaintiff to show by a preponderance of the evidence the terms of the warranty, the failure of some warranted part, a demand upon the defendant to perform under the terms of the warranty, a failure of the defendant to do so, a compliance with the terms of the warranty by the plaintiff, and damages measured by the terms of the warranty." *Evitts v. DaimlerChrysler Motors Corp.*, 834 N.E.2d 942, 949 (Ill. App. Ct. 2005). "A plaintiff must prove that the alleged malfunctioning… [is] caused by a defect in the parts and workmanship, and that the manufacturer failed to repair or replace the parts in accordance with the warranty." *Oggi Trattoria & Caffe, Ltd. v. Isuzu Motors Am., Inc.*, 865 N.E.2d 334, 340 (2007). "Because

express warranties are contractual in nature, the language of the warranty itself controls and dictates the rights and obligations of the parties to it." *Evitts*, 834 N.E.2d at 950.

Tamko argues that Disher's breach of express warranty claims fails because Tamko complied with the terms of the Limited Warranty. Specifically, after receiving Disher's warranty claim form and supporting documentation, Tamko sent Disher a settlement offer that included a materials certificate for 15 new squares of shingles – the prorated rate of replacement shingles – in accordance with the express terms of the Limited Warranty. Disher does not deny that Tamko complied with the terms of the Limited Warranty. Rather, citing numerous non-precedential cases, Disher contends that the Limited Warranty fails of its essential purpose because the shingles did not last 30 years as he expected.

"Repair and replace" warranties can fail of their essential purpose where the seller is unwilling or unable to correct defects in the products. *See*, eg., *Smith v. Navistar Int'l Transp. Corp.*, 714 F. Supp. 303, 308 (N.D. Ill. 1989), aff'd, 957 F.2d 1439 (7th Cir. 1992) (denying summary judgment on the issue of whether dealer's failure to repair certain defects on numerous occasions caused the warranty to fail of its essential purpose). Here, however, Tamko was both willing and able to comply with the terms of the Limited Warranty – providing Disher replacement shingles pursuant to the express terms of the Limited Warranty. The fact that the Limited Warranty did not compensate Disher for the entirety of his damages is of no consequence – Tamko's warranty did not fail of its essential purpose.

Disher next contends that the 30-day notice provision and the limited remedy provided by the Limited Warranty are unconscionable.[2] Under Illinois law, a contract may be found to be

---

[2] The Limited Warranty required Disher to "notify Tamko . . . of any claims under th[e] limited warranty within thirty (30) days following discovery of the problem with the Shingles" (Doc. 38-1). Although Disher became aware of the alleged problems with the shingles in 2013, he did not notify Tamko until March 2014. Thus, it is undisputed that Disher did not comply with the 30-day notice requirement.

unconscionable as a matter of law on either a "procedural" or "substantive" basis, or both. *Razor v. Hyundai Motor America*, 854 N.E.2d 607, 622 (2006). Procedural unconscionability exists when a contractual term is so difficult to find, read, or understand that the party could not fairly be said to have been aware he was agreeing to it. *Id*. Procedural unconscionability also takes into account the party's relative lack of bargaining power. *Razor,* 854 N.E.2d at 622, citing *Frank's Maintenance & Engineering, Inc. v. C.A. Roberts Co.,* 408 N.E.2d 403, 410 (1980). On the other hand, substantive unconscionability refers to contractual terms that are inordinately one-sided in a party's favor. *Razor,* 854 N.E.2d at 622, citing *Rosen v. SCIL, LLC,* 799 N.E.2d 488, 493 (2003).

Disher argues that the Limited Warranty is procedurally unconscionable because it was pre-printed, he had no role or bargaining power in its drafting and had no opportunity to review the warranty prior to purchasing the Shingles. Tamko maintains that Disher learned of the warranty at the time he purchased the shingles, but chose not to inquire about the specifics of the warranty.

As the Illinois Supreme Court has observed, contracts whose terms are nonnegotiable "are a fact of modern life." *Kinkel v. Cingular Wireless LLC,* 857 N.E.2d 250, 266 (2006). "Consumers routinely sign such agreements to obtain credit cards, rental cars, land and cellular telephone service, home furnishings and appliances, loans, and other products and services. It cannot reasonably be said that all such contracts are so procedurally unconscionable as to be unenforceable." *Id*. The fact that an agreement is a contract of adhesion does not automatically defeat enforceability. *Phoenix Ins. Co. v. Rosen,* 949 N.E.2d 639, 654 (2011). Rather, additional coercion or overreaching is required to render an adhesion contract unenforceable. *Tortoriello v. Gerald Nissan of N. Aurora, Inc.,* 882 N.E.2d 157, 175 (2008).

Here, there is no indication that the Limited Warranty was the product of such gross inequity that it qualifies as procedurally unconscionable. Nor is there any indication that the warranty terms were so difficult to find, read, or understand that Disher could not fairly be said to have been aware he was agreeing to it. Disher learned of the warranty at the time he purchased the shingles. However, he did not inquire about the warranty's specifics – assuming that the warranty was a full replacement warranty (including replacement shingles and the labor necessary to install them) for a term of 30 years. "A contract need not be read to be effective; people who accept take the risk that the unread terms may in retrospect prove unwelcome." *Hill v. Gateway 2000, Inc.*, 105 F.3d 1147, 1148 (7th Cir. 1997); *see also ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447, 1452 (binding consumer to arbitration clause printed inside box of software). Thus, the Limited Warranty was not procedurally unconscionable.

Disher also asserts that the warranty is substantively unconscionable because Tamko's "limited remedy and notice provisions are internally inconsistent with Tamko's 30-year warranty". The notice provision merely requires a claimant to notify Tamko of any claims under the Limited Warranty within thirty days following the claimant's discovery of the problem with the shingles – whether that discovery is made during the first month or the 360-month of the warranty. Disher cites no case law suggesting that the 30-day notice requirement is *per se* unreasonable nor is there any other evidence in the record supporting his substantive unconscionability argument.

Because Tamko complied with the express terms of the Limited Warranty, and given the lack of evidence supporting Disher's claim of unconscionability, Tamko's motion for summary judgment is granted as to Disher's breach of express warranty claim.

## Economic Loss Doctrine

The economic loss doctrine denies a tort remedy for product defects when the loss "is rooted in disappointed contractual or commercial expectations." *See Mutual Serv. Cas. Ins. Co. v. Elizabeth State Bank,* 265 F.3d 601, 615 (7th Cir. 2001) (quoting *Collins v. Reynard,* 607 N.E.2d 1185, 1188 (1992) (Miller, C.J., concurring)). Contract law provides the proper remedy when a product is unfit for its intended use. *See Moorman Mfg. Co. v. Nat'l Tank Co.,* 435 N.E.2d 443, 450 (1982). To avoid the denial of remedy based on the economic loss doctrine, the plaintiff must show harm above and beyond their contractual or commercial expectations. *In re Chicago Flood Litigation,* 680 N.E.2d 265, 276 (1997).

Tamko asserts that the economic loss doctrine applies because there is no evidence that the shingles caused any property damage to Disher's home. Disher argues that the Neumann Inspection Report and its accompanying pictures show that his home suffered water leaks and interior water damage, and therefore raise a genuine issue of material fact as to whether there was property damage to his home as a result of the shingles. The Report, however, notes that the flashing points on the chimney were cracked and specifically states that no apparent water damage was found that could be attributed to the roof or shingles. Disher's warranty claim form also indicates that his roof was not leaking at the time he submitted the form in 2014 and Disher admitted that he did not have any leaks in his house in 2013 – the year that he discovered the issues with the shingles. Disher's father also testified that he has never witnessed leaks in the home. There simply is no evidence that the shingles caused any property damage to Disher's home. As such, the economic loss doctrine applies and Tamko's motion is be granted as to Disher's negligence and strict liability claims.

**Illinois Consumer Fraud and Deceptive Business Practices Act**

The Illinois Consumer Fraud Act ("ICFA") provides a remedy for "unfair methods of competition and unfair or deceptive acts or practices" in specified commercial transactions. 815 Ill. Comp. Stat. 505/2. "[U]nfair or deceptive acts or practices" under the statute include "false promise[s], misrepresentation [s] ... or omission[s] of any material fact." *Id.* To establish a violation of the ICFA, a plaintiff must show that (1) the defendant committed a deceptive act, such as the misrepresentation or concealment of a material fact; (2) the defendant intended to induce the plaintiff's reliance on the deception; and (3) the deception occurred in a course of conduct involving trade or commerce. *Siegel v. Shell Oil Co.,* 612 F.3d 932, 934 (7th Cir. 2010) citing *Robinson v. Toyota Motor Credit Corp.,* 775 N.E.2d 951, 960 (Ill. 2002)).

The ICFA is "not intended to apply to every contract dispute or to supplement every breach of contract claim with a redundant remedy." *See Zankle v. Queen Anne Landscaping,* 724 N.E.2d 988, 992–93 (2000). A consumer-fraud claim under the statute requires something more than a garden-variety breach of contract. *Greenberger v. GEICO Gen. Ins. Co.,* 631 F.3d 392, 399 (7th Cir. 2011) citing *Avery v. State Farm Mut. Auto. Ins. Co.,* 835 N.E.2d 801, 844 (2005) ("A breach of contractual promise, without more, is not actionable under the Consumer Fraud Act."). The plaintiff must prove that the defendant engaged in deceptive acts or practices distinct from any underlying breach of contract. *Id.*

Disher contends that Tamko represented its shingles were manufactured to meet the composition and physical property specifications set out in ASTM D3462, but the evidence establishes that the shingles do not comply with ASTM D3462. He asserts that had he known the shingles did not comply with ASTM D3462, he would not have purchased them. But Disher's deposition testimony does not support his arguments.

Disher testified that he purchased the shingles because of their color, "they were architectural which is supposed to be good", and because they had a 30-year warranty. He believed the warranty was a full replacement warranty for 30 years based on a sign with a symbol that stated 30 year warranty. The record does not support Disher's contention that any Tamko brochures or advertisements referred to a full, rather than a limited, 30-year warranty. Nor is there any evidence that he purchased the shingles based on the composition and physical property specifications set out in ASTM D3462. Moreover, while Disher alleges that Tamko made misrepresentations on a website and in brochures and advertisements, there is no evidence that he actually read or viewed those alleged misrepresentations.

"[T]o maintain an action under the [ICFA], the plaintiff must actually be deceived by a statement or omission that is made by the defendant." *Avery,* 835 N.E.2d at 861. Based on the evidence in the record, Disher cannot satisfy this requirement or survive summary dismissal of his IFCA claim.

## Unjust Enrichment

Unjust enrichment "is not a separate cause of action that, standing alone, will justify an action for recovery." *Martis v. Grinnell Mut. Reinsurance Co.,* 905 N.E.2d 920, 928 (2009). As such, when a plaintiff's particular theory of unjust enrichment is based on alleged fraudulent dealings and the Court rejects his or her claim that the dealings were fraudulent, the unjust enrichment action is no longer viable. *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 448 (7th Cir. 2011). Here, Disher's unjust enrichment claim is based on Tamko's alleged violations of the ICFA. As summary judgment is granted as to his ICFA claim, Disher's unjust enrichment claim also fails.

**IT IS SO ORDERED.**

**DATED: February 15, 2018**

                **s/ Staci M. Yandle**
                **STACI M. YANDLE**
                **United States District Judge**