IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| RICHARD DISHER, ERIC KLINE, JOHN O'MALLEY and DIMITRI MISHUROV, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>TAMKO BUILDING PRODUCTS, INC.,<br><br>Defendant. | Case No. 14-CV-740-SMY-SCW |

# MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Pending before the Court is Defendant Tamko Building Products, Inc.'s ("Tamko") Motion for Summary Judgment with Respect to the Claims of Plaintiff John O'Malley (Doc. 140). Plaintiff filed a response in opposition (Doc. 161). For the following reasons, the motion is **GRANTED in part and DENIED in part**.

## Background

In 2003, Plaintiff John O'Malley contracted with Bright Built Homes, Inc. ("Bright Built") to build a custom home in Fisherville, Kentucky (Doc. 140-2, pp. 15-16, p. 22). O'Malley did not choose the brand of shingles installed on the roof, but relied instead on the professionals from Bright Built – David Bright and Nick Davis – to select shingles that met his specifications (Doc. 140-2, p. 30). Prior to the installation of the shingles, O'Malley told Bright Build the specific color he wanted and instructed them to purchase a 25-year algae resistant shingle (Doc. 140-2, pp. 31-34). During his deposition, O'Malley testified that he purchased the

1

shingles specifically because of the 30-year warranty (Doc. 161-1, pp. 9-11). However, he never asked Bright Built about the warranty applicable to the shingles selected for his home (Doc. 140-2, p. 36).

The shingles came with a Limited Warranty that provided a remedy for damages caused by manufacturing defects (Doc. 133-4). The warranty provided, in relevant part:

> Tamko Full Start Period: If, during the Full Start Period, Shingles are determined to have manufacturing defects which have directly caused leaks, Tamko will provide the Owner with a Material Certificate for replacement shingles (or, at Tamko's option, the Dollar Limit Per Square identified in Table 1) and a Labor Payment Certificate that may be used to pay the reasonable cost of installing replacement shingles, according to the terms of this limited warranty. This is Tamko's Maximum Liability during the Full Start Period.
>
> After the Full Start Period: If, after the end of the Full Start Period, Shingles are determined to have manufacturing defects which have directly caused leaks, Tamko's obligation is limited to providing the Owner with a Material Certificate for replacement shingles or, at Tamko's option, the Dollar Limit Per Square identified in Table 1. The Dollar Limit Per Square and the quantity of replacement shingles will be prorated over the life of this limited warranty. This is Tamko's Maximum Liability after the Full Start Period. Tamko is not responsible for the costs of labor for installing replacement shingles after the Full Start Period. Proration shall be determined by dividing the number of months remaining in the Term by the total number of months of the Term…
>
> Full Start Period is defined that the initial period of the Term during which Tamko's obligation is not prorated. The length of the Full Start Period is listed in Table 1.

Pursuant to Table 1 of the warranty, O'Malley's shingles were subject to a "full start" period of five years and a warranty term of 360 months (Doc. 140-6). The warranty also covered staining by algae growth for a period of 10 years following the initial application (Doc. 140-6). The Limited Warranty was printed on the outside of the wrapper of every bundle of shingles sold by Tamko (Doc. 140-13).

O'Malley saw the bundles of shingles during installation, but did not read the Limited Warranty or any other information printed on the wrappers (Doc. 140-2, pp. 26-27, p. 87). He

believes Tamko defrauded him because the bundle wrapper the shingles came with stated that the shingles were 30-year shingles, however "they only lasted 10." (Doc. 161-1, pp. 12-13).

In 2009, O'Malley hired a contractor to re-adhere four shingles along the initial row of shingles directly adjacent to a sheet metal gutter guard that he had installed after moving into his home (Doc. 140-2, pp 37-39). Over the next six years, he had a total of seven shingles in the same row re-adhered by contractors. *Id*., p. 77. O'Malley also noticed discoloration from algae on his roof in 2009. *Id*., p. 80.

In August 2013, O'Malley emailed Tamko's Technical Services Department to inquire about algae and separation of the shingles (Doc. 140-9). He submitted a warranty claim to Tamko in April 2014 (Doc. 140-10). By letter dated May 23, 2014, Tamko denied O'Malley's warranty claim (Doc. 140-13). The letter states that Tamko's inspection of O'Malley's shingle samples revealed the shingles were improperly applied and not installed according to Tanko's instructions. *Id*. The letter also states that: (1) the limited algae warranty had expired; (2) the wind warranty did not cover damage from winds exceeding 70 miles per hour and had, in any event, expired; (3) O'Malley had failed to notify Tamko of any alleged problems within 30 days of his discovery; and (4) under the express language of the Limited Warranty, no action could be brought against Tamko after one year from the date of the discovery of the alleged problem. *Id*.

## Discussion

Tamko argues that summary judgment is warranted on several grounds: (1) O'Malley's claims for strict liability and negligence are barred by the economic loss doctrine; (2) O'Malley's fraudulent concealment claim fails because discovery conclusively establishes that he did not rely on any Tamko statement; and (3) O'Malley's unjust enrichment claim fails because the Limited Warranty governs his relationship with Tamko.

Summary Judgment is "the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Johnson v. Cambridge Indus., Inc.,* 325 F.3d 892, 901 (7th Cir. 2003). Summary judgment is proper only if the moving party can demonstrate that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). The moving party bears the burden of establishing that no material facts are genuinely in dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party. *Lawrence v. Kenosha County,* 391 F.3d 837, 841 (7th Cir. 2004). Summary dismissal is warranted where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex,* 477 U.S. at 323.

**Economic Loss Doctrine**

Kentucky's economic loss doctrine prevents a plaintiff from recovering in tort for damage caused by a defective product when the only damages are to the product itself and consequential damages such as lost profits. *See Giddings & Lewis, Inc. v. Industrial Risk Insurers*, 348 S.W.3d 729, 733 (Ky. 2011). The doctrine requires any recovery for those types of damages to be sought through contract claims. *Id.*

Tamko contends that Kentucky's economic loss doctrine bars O'Malley's strict liability and negligence claims. However, the Sixth Circuit Appellate Court recently held that under Kentucky law, the economic loss doctrine does not extend to consumer transactions. *See State Farm Mut. Auto. Ins. Co. v. Norcold, Inc*., 849 F.3d 328 (6th Cir. 2017). Given that this matter involves a consumer transaction, the economic loss doctrine is inapplicable. Accordingly,

Tamko's motion for summary judgment is denied as to O'Malley's strict liability and negligence claims.

**Fraudulent Concealment**

To prevail on a fraud by omission claim under Kentucky law "a plaintiff must prove: '(1) the defendant had a duty to disclose the material fact at issue; (2) the defendant failed to disclose the fact; (3) the defendant's failure to disclose the material fact induced the plaintiff to act; and (4) the plaintiff suffered actual damages as a consequence.'" *Republic Bank & Trust Co. v. Bear Stearns & Co., Inc.*, 683 F.3d 239, 255 (6th Cir. 2012) quoting *Waldridge v. Homeservices of Ky., Inc.*, 384 S.W.3d 165, 171 (Ky. App. Ct. 2011). "The existence of a duty to disclose is a question of law for the court." *Giddings & Lewis, Inc. v. Indus. Risk Insurers,* 348 S.W.3d 729, 747–48 (Ky. 2011).

Not every nondisclosure constitutes fraud by omission. Rather, a duty to disclose arises in four circumstances: "(1) where there is a confidential or fiduciary relationship between the parties; (2) where the duty is provided by statute; (3) where a defendant has partially disclosed material facts to the plaintiff but created the impression of full disclosure; and (4) where one party to a contract has superior knowledge and is relied upon to disclose the same." *Id.* citing *Giddings,* 348 S.W.3d at 747–48; *see also Rivermont Inn, Inc. v. Bass Hotels & Resorts, Inc.,* 113 S.W.3d 636, 641 (Ky. Ct. App. 2003). Where a fiduciary duty does not exist, Kentucky courts have been careful not to apply the other three circumstances so broadly as to transform every day, arms-length business transactions into fiduciary relationships. *See Gresh v. Waste Servs. of Am., Inc.,* 311 F. App'x 766, 772 (6th Cir. 2009).

None of the four circumstances applies to O'Malley's claims. First, there is no evidence nor do the parties allege that O'Malley and Tamko had a confidential or fiduciary relationship.

Fiduciary relationships arise if the parties understood and agreed "that confidence was reposed by one party and trust accepted by the other." *In re Sallee*, 286 F.3d 878, 893 (6th Cir. 2002). Fiduciary relationships can be informal, but they must evidence circumstances showing both parties agreed that one party would be acting in the interest of the other. *Id*. O'Malley has also not invoked any statute that would create a duty to disclose or alleged that Tamko partially disclosed material facts or information regarding the shingles.

Likewise, a superior-knowledge duty of disclosure is inapplicable. The Sixth Circuit has rejected arguments that the specialized knowledge possessed by a seller creates fiduciary obligations to buyers. *See Greenberg v. Life Ins. Co. of Virginia,* 177 F.3d 507, 521–22 (6th Cir. 1999). As Tamko had no duty to disclose material facts regarding the shingles, O'Malley's fraudulent concealment claim fails as a matter of law.

**Unjust Enrichment**

Under Kentucky law, unjust enrichment requires: (i) a benefit conferred upon defendant at plaintiff's expense; (ii) a resulting appreciation of benefit by the defendant; and (iii) inequitable retention of benefit without payment for its value."). *Collins v. Kentucky Lottery Corp.,* 399 S.W.3d 449, 455 (Ky. Ct. App. 2012). "However …'[t]he doctrine of unjust enrichment has no application in a situation where there is an explicit contract.' *Shane v. Bunzl Distrib. USA, Inc.,* 200 F. App'x 397, 404 (6th Cir. 2006) quoting *Codell Constr. Co. v. Commonwealth,* 566 S.W.2d 161, 165 (Ky. Ct. App. 1977).

Here, the Limited Warranty is an explicit contract which covered O'Malley's shingles in the event of manufacturing defects.[1] Because the warranty covers the same subject matter as his

---

[1] Under the warranty terms, if a manufacturing defect causing a leak was found, Tamko agreed to cover the complete cost of both replacement shingles and the labor to install them during the full-start period. After the full-start period, Tamko's obligation was prorated over the 30-year life of the Limited Warranty. Tamko also agreed to

unjust enrichment claim, Tamko's motion for summary judgment as to that claim must be granted as a matter of law.

## Conclusion

For the foregoing reasons, Defendant Tamko's Motion for Summary Judgment is GRANTED as to Plaintiff John O'Malley's fraudulent concealment and unjust enrichment claims, but DENIED as to his strict liability and negligence claims.

**IT IS SO ORDERED.**

**DATED: February 15, 2018**

**s/ Staci M. Yandle**
**STACI M. YANDLE**
**United States District Judge**

---

pay the reasonable costs for cleaning shingles stained by algae growth for a period of 10 years after the initial application.